**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2292-14T4

IN THE MATTER OF THE
REVOCATION OF THE
CERTIFICATE OF
MICHAEL BONSU BY THE
STATE BOARD OF EXAMINERS.

_____

Argued January 10, 2017 — Decided August 7, 2017

Before Judges Rothstadt and Sumners.

On appeal from the New Jersey Department of
Education, State Board of Examiners, Docket
No. 4-2/14A.

Randy P. Davenport argued the cause for
appellant Michael Bonsu.

Melissa Dutton Schaffer, Assistant Attorney
General, argued the cause for respondent New
Jersey Department of Education (Christopher S.
Porrino, Attorney General, attorney; Ms.
Schaffer, of counsel; Lauren A. Jensen, Deputy
Attorney General, on the brief).

PER CURIAM

Michael Bonsu appeals from the final decision of the Acting

Commissioner of Education (Commissioner) upholding the decision

of the State Board of Examiners (State Board) to revoke his Teacher

of the Handicapped (TOH) certificate. The State Board took its action based on the factual findings and recommendation by an Administrative Law Judge (ALJ) who conducted an evidentiary hearing. The ALJ found that Bonsu submitted a forged supervisor certificate as part of his application for a supervisory position and recommended that his teaching certificate be revoked.

In this appeal, Bonsu argues that the Commissioner's reliance upon the ALJ's recommendation was misplaced because the ALJ's factual-findings were arbitrary and capricious, the ALJ erroneously admitted Bonsu's answer to the order to show cause to determine he was not credible, and the ALJ erroneously barred certified statements by Bonsu's co-workers as unsupported by the residuum rule. Alternatively, Bonsu contends the revocation of his teaching certificate was an unduly harsh punishment. Having reviewed the record and based upon our standard of review, we affirm.

The evidentiary hearing record reveals the following. Since 2010, Bonsu, the holder of a TOH certificate, had been employed as an inclusion teacher and a member of the discipline team at Barringer High School in the State-Operated School District of the City of Newark. As a result of Bonsu's involvement with improving the overall discipline of Barringer students, the school's principal decided to recommend him for promotion to a newly created

supervisory position for the 2011-2012 school year. The promotion was conditioned upon budget approval and required that Bonsu possess a supervisor certificate.

On January 9, 2012, Bonsu met with a personnel technician in the district's human resources department (HR) to sign an employment contract for the new supervisor position. The technician testified that she advised Bonsu that there was no supervisor certificate in his personnel file and asked him if he had a copy. She also indicated her review of the Department of Education's website did not indicate that he possessed a supervisor certificate. Bonsu then handed her a copy of a supervisor certificate, purportedly in his name. Noticing some discrepancy in the font size and typing of Bonsu's name on the certificate from other supervisor certificates that she had seen, the personnel technician asked him if he had an original certificate. According to her, Bonsu said he did not.

Bonsu, however, testified that the personnel technician did not ask for a copy of his supervisor certificate, and he did not tell her that he possessed a supervisor certificate. He stated that he did not look at the document he gave her, thinking he was handing her a copy of his teaching certificate. He knew that despite fulfilling all the requirements necessary to obtain a supervisor certificate, he did not possess one at that time because

he had not submitted his application to the Department of Education.

In the meantime, after the personnel technician's concerns were reported to the State Board, it was revealed that the certificate number of the supervisor certificate presented by Bonsu belonged to someone else and that the certificate had been forged to reflect Bonsu's name.

In response to the State Board's order to show cause why Bonsu's teacher certificate should not be revoked, Bonsu's counsel prepared an answer stating that the fake supervisor certificate was created by a co-worker and placed with Bonsu's supervisor credentials records, without Bonsu's knowledge, and that Bonsu accidently submitted it to the school district. At the evidentiary hearing, Bonsu's objection to the ALJ's consideration and admission of the answer was overruled. The ALJ ruled that although the statement was not signed by Bonsu, it "certainly represents . . . an understanding by his [c]ounsel as to what [Bonsu's] position [is] . . . in relation to the allegations."

Bonsu did not provide the testimony of his co-workers regarding the fake supervisor certificate. Instead, he offered into evidence, under the residuum rule, certified statements by three co-workers, that, without Bonsu's knowledge, they created the fake supervisor certificate as a prank and placed it in a

A-2292-14T4

folder on Bonsu's desk, which contained his records for the supervisor certificate. The ALJ barred the admissibility of the statements on the basis that they were hearsay unsupported by a residuum of competent evidence.

In his initial decision, the ALJ found that Bonsu's submission of a fake supervisor certificate was unbecoming conduct. He concluded the personnel technician's testimony was credible and did not believe Bonsu's testimony that he was unaware that he submitted a fake supervisor certificate. The ALJ stated:

> [Bonsu] claims that he never looked in his folder between November 2011 and January 2012 and never looked at the folder on January 9 because he was rushed and never looked at the document as he handed it to [the HR technician], coupled with the notion that his friends would have initiated a practical joke without his knowledge but then fail to make any inquiries of him about the joke, is a story that simply does not hang together.

The ALJ additionally pointed out that Bonsu was unable to produce the alleged pranksters to testify in support of his account of the events. The ALJ also pointed to inconsistencies, noting the proffered hearsay statement by one of Bonsu's co-workers that he put a sticky note on the fake certification and placed it in Bonsu's folder, was not reflected in Bonsu's testimony that he handed the document to the personnel technician thinking it was his teacher of the handicapped certification.

The ALJ was mindful of Bonsu's "laudatory service" in instilling a climate of discipline, but recommended revocation of his teacher certificate. Relying upon other Commissioner decisions, the ALJ reasoned that Bonsu's dishonest behavior set a poor example for students, the gravity of which was worsened by his duties at the school as disciplinary officer.

The State Board adopted the ALJ's findings and recommendations and issued an order of revocation. Bonsu filed exceptions with the Acting Commissioner. The Acting Commissioner issued a decision affirming the decision of the Board. He found that "the record adequately supports the Board's determination that [Bonsu] engaged in unbecoming conduct and that the revocation of [his teacher c]ertificate was the appropriate penalty." We agree.

Our review of the decision of the Commissioner is limited to determining:

> (1) whether the agency's action violated the legislative policies expressed or implied in the act governing the agency; (2) whether the evidence in the record substantially supports the findings on which the agency's actions were premised; and (3) "whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."

[<u>Barrick v. State, Dep't of Treasury</u>, 218 <u>N.J.</u> 247, 260 (2014) (quoting <u>In re Carter</u>, 191 <u>N.J.</u> 474, 482 (2007)).]

Here, the Commissioner's decision is well supported by the evidence developed before the ALJ. And, while Bonsu may have performed his duties admirably and had satisfied all the requirements necessary to obtain a supervisor certificate, we discern no legal basis to overturn or modify the disciplinary sanction to revoke his teacher certificate.

We find no merit to Bonsu's argument that the ALJ committed reversible error in admitting his answer to the order to show cause to show Bonsu made inconsistent statements and lacked credibility. In his answer, Bonsu contended that he "accidentally" included the fake certificate in the folder with his application credentials. Bonsu argues that his use of the word "accidentally" was not meant to connote a knowing act. We discern no error in the ALJ's finding that the term "accidentally" implies some knowledge about the certificate, the existence of which conflicts with Bonsu's testimony, casting doubt on his credibility. Additionally, we view consideration of Bonsu's answer as harmless. The ALJ did not rely solely on the answer to find that Bonsu was not credible. More importantly, he found that the personnel technician's testimony was credible and rebutted Bonsu's account

that she did not ask him for a copy of his supervisor certificate when he gave her a copy of the fake supervisor certificate.

Finally, we reject Bonsu's argument that his co-workers' statements should have been admitted by the ALJ under the residuum rule. Subject to the judge's discretion, N.J.A.C. 1:1-15.5(a) provides hearsay is admissible in administrative proceedings, nevertheless, "some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness." N.J.A.C. 1:1-15.5(b). "Under the residuum rule, N.J.A.C. 1:1-15.5(b), hearsay is admissible in administrative hearings to corroborate other, non-hearsay evidence." Hemsey v. Bd. of Trs., Police & Firemen's Retirement Sys., 393 N.J. Super. 524, 534 (App. Div. 2007), rev'd in part on other grounds, 198 N.J. 215 (2009)).

In this proceeding, the co-workers' statements that unbeknownst to Bonsu they pulled a prank on him by creating and placing a fake supervisor certificate in a folder with his other credentials, were not supported by legally competent evidence. There was no first-hand witness testimony, or any other admissible evidence, that substantiated the statements. Thus, the ALJ did not abuse his discretion in declining to admit the co-workers' statements.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION