**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5179-16T4

V.S.,

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES and BERGEN
COUNTY BOARD OF SOCIAL SERVICES,

    Respondents-Respondents.

_____

        Submitted June 5, 2018 — Decided June 18, 2018

        Before Judges Hoffman and Gilson.

        On appeal from the Division of Medical
        Assistance and Health Services, Department of
        Human Services.

        John Pendergast, attorney for appellant.

        Gurbir S. Grewal, Attorney General, attorney
        for respondent Division of Medical Assistance
        and Health Services (Melissa H. Raksa,
        Assistant Attorney General, of counsel; Angela
        Juneau Bezer, Deputy Attorney General, on the
        brief).

PER CURIAM

Appellant V.S. appeals from a June 12, 2017 final agency determination by the Director of the Division of Medical Assistance and Health Services (DMAHS) that denied her application for Medicaid. We affirm.

I

Appellant is a nursing facility resident; her adult son is her legal guardian, and she is represented by counsel. On November 25, 2015, appellant's authorized representative submitted a Medicaid application with the Bergen County Board of Social Services (BCBSS) on her behalf. The application stated appellant's primary sources of income were social security and pension benefits. It also stated she maintained TD Bank checking accounts, Prudential investment accounts, and had recently sold a single family home in Saddle Brook.

The BCBSS replied to appellant's application with a notice requesting information verifying the information included in her application; among other things, it requested bank statements from August 2015 through November 2015. The BCBSS denied appellant's application for failure to produce those documents[1] after she failed to respond to the notice. Appellant requested a hearing,

_____

[1] Specifically, the BCBSS denied the application for failure "to provide [b]ank statements from [August] 2015 to [December] 2015."

and subsequently, the matter was transferred to the Office of Administrative Law.

On April 26, 2017, an administrative law judge (ALJ) issued an initial decision and concluded the BCBSS properly denied appellant's Medicaid application due to failure to produce the requested documentation. Specifically, the ALJ rejected appellant's arguments that state and federal regulations required the BCBSS to obtain the documentation itself, rather than requiring appellant to produce the documents.

On June 12, 2017, DMAHS issued a final agency decision adopting the ALJ's initial decision. DMAHS found,

> The credible evidence in the record demonstrates that [appellant] failed to provide the needed information prior to the January 28, 2017 denial of benefits. Without this information, [the] BCBSS was unable to complete its eligibility determination and the denial was appropriate.
>
> . . . [DMAHS] agree[s] with the ALJ that there is nothing in the state or federal law that either excuses [appellant] from her obligation to obtain documents needed to verify her eligibility or requires [the] BCBSS to obtain documents not available through the [Asset Verification System] . . . .

This appeal followed.

## II

An appellate court will not reverse the decision of an administrative agency unless it is "arbitrary, capricious or

unreasonable or . . . not supported by the substantial credible evidence in the record as a whole." Barrick v. State, 218 N.J. 247, 259 (2014) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). In cases when an agency head reviews the fact-findings of an ALJ, a reviewing court must uphold the agency head's findings even if they are contrary to those of the ALJ, if supported by substantial credible evidence. In re Silberman, 169 N.J. Super. 243, 255-56 (App. Div. 1979).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted to the Commissioner of the Department of Human Services. N.J.S.A. 30:4D-7. DMAHS is the agency within the Department of Human Services that administers the Medicaid program. N.J.S.A. 30:4D-5; N.J.A.C. 10:49-1.1. Accordingly, DMAHS is charged with the responsibility for safeguarding the interest of the New Jersey Medicaid program and its beneficiaries. N.J.A.C. 10:49-11.1(b). DMAHS is required to manage the State's Medicaid program in a fiscally responsible manner. See Dougherty v. Dep't of Human Servs., 91 N.J. 1, 4-5 (1982).

The local county welfare agency (CWA), here the BCBSS, evaluates Medicaid eligibility. N.J.S.A. 30:4D-7a; N.J.A.C.

10:71-2.2(a), -3.15. Eligibility must be established based on the legal requirements of the program. N.J.A.C. 10:71-3.15. The CWA must verify the equity value of resources through appropriate and credible sources. If the applicant's resource statements are questionable or the identification of resources is incomplete, "the CWA shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3).

"The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. Applicants must provide the CWA with verifications, which are identified for the applicant. The applicant must "[a]ssist the CWA in securing evidence that corroborates his or her statements . . . ." N.J.A.C. 10:71-2.2(e)(2). The applicant's statements in the application are evidence and must substantiate the application with "corroborative information from" pertinent sources. N.J.A.C. 10:71-3.1(b).

The CWA must timely process the application. See 42 U.S.C. § 1396a(a)(3); see also 42 C.F.R. § 435.911(c); N.J.A.C. 10:71-2.3. It must send each applicant written notice of the agency's decision on his or her application. N.J.A.C. 10:71-8.3. The CWA should deny applications when the applicant fails to timely provide verifications. See N.J.A.C. 10:71-2.2(e), -2.9, -3.1(b).

III

On appeal appellant reiterates the arguments she presented to the ALJ and DMAHS, alleging state and federal law require the BCBSS to make an initial effort in obtaining the information it requested from her. We disagree, and affirm substantially for the reasons stated in the ALJ's initial decision, which DMAHS adopted.

Appellant first argues N.J.A.C. 10:71-2.2, -2.10, -4.1, and -4.2 require DMAHS "caseworkers to assist Medicaid applicants in exploring their eligibility" and "conduct [a] collateral investigation to verify, supplement, or clarify essential information." Appellant argues the BCBSS failed to contact her financial institution to verify her resources, and therefore erroneously denied her application.

Appellant's argument, however, ignores N.J.A.C. 10:71-2.2(e), which provides:

> As a participant in the application process an applicant shall:
>
> 1. Complete, with the assistance from the CWA if needed, any forms required by the CWA as a part of the application process;
>
> 2. Assist the CWA in securing evidence that corroborates his or her statements; and
>
> 3. Report promptly any change affecting his or her circumstances.
>
> [(Emphasis added).]

DMAHS appropriately interpreted that regulation as requiring Medicaid applicants to supplement their applications and verify information CWAs find relevant. Here, the BCBSS requested appellant provide bank statements, and when she failed to do so, it correctly denied her application. Moreover, as the ALJ noted, appellant's Medicaid application explicitly stated she did not require assistance in its completion. Accordingly, DMAHS did not act arbitrarily, capriciously, or unreasonably in denying her application.

Appellant further argues that under 42 C.F.R. § 435.948(b), the BCBSS had the "affirmative duty to obtain information regarding" her eligibility. She argues the BCBSS breached that duty when it failed to obtain her bank information via an electronic asset verification system (AVS), or by other means. See 42 U.S.C. § 1396w (requiring states to implement AVS).

42 C.F.R. § 435.948(b) provides: "To the extent that the information identified in paragraph (a)[2] of this section is

---

[2] 42 C.F.R. § 435.948(a) requires DMAHS to request financial eligibility information "from other agencies in the State and other States and Federal programs":

> related to wages, net earnings from self-employment, unearned income and resources from the State Wage Information Collection Agency (SWICA), the Internal Revenue Service (IRS), the Social Security Administration (SSA), the

available through the electronic service established in accordance with § 435.949 of this subpart, the agency must obtain the information through such service." 42 C.F.R. § 435.949, entitled "Verification of information through an electronic service," applies to information available from "[f]ederal agencies and other data sources, including the SSA, the Department of Treasury, and the Department of Homeland Security."

Here, appellant inaccurately interprets the federal regulations as requiring the BCBSS to obtain the requisite supplemental information for her. There is no regulation that requires agencies to obtain information about a Medicaid applicant's bank records from an electronic service. See 42 C.F.R. § 435.952(c). There is also no regulation that precludes the CWA from obtaining such information directly from the Medicaid applicant. Ibid.

As the ALJ noted, "federal laws regarding [DMAHS's] use of the AVS system do not apply [when] the information needed by the [CWA] is not on the AVS system and [when] the documents needed by the

---

agencies administering the State unemployment compensation laws, the State-administered supplementary payment programs[,] . . . and any state program administered under a plan approved under Titles I, X, XIV, or XVI of the Act[,and i]nformation related to eligibility or enrollment from the Supplemental Nutrition Assistance Program . . . .

A-5179-16T4

[CWA] (bank statements) are not obtainable from the AVS system, but only from the bank itself." Here, the BCBSS requested appellant provide bank account information — this is not data available from federal agencies, but rather a private financial institution.

Accordingly, appellant's arguments lack merit, and DMAHS did not act arbitrarily or capriciously in denying her Medicaid application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5179-16T4